UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

BENJAMIN HARRISON and MARKISHA
PRESCOD, *Individually and as Parents
and Natural Guardians of Infants MY.H,
MA.H and MI.H, infants under the age of
thirteen*,

                              *Plaintiffs*,

        – against –

CITY OF NEW YORK, DET. ADAM
GEORG, DET. RYAN PRETTY, SGT.
EDWARD SCALI, PO COREY FISCHER,
UNIDENTIFIED OFFICERS OF THE
NEW YORK CITY POLICE
DEPARTMENT, THE UNITED STATES,
and the FEDERAL BUREAU OF
INVESTIGATION,

                              *Defendants*.

---

**MEMORANDUM & ORDER**
22-cv-04169 (NCM) (CHK)

**NATASHA C. MERLE**, United States District Judge:

Plaintiffs Benjamin Harrison and Markisha Prescod, individually and on behalf of their minor children, bring suit against the City of New York, Detective Adam Georg, Detective Ryan Pretty, Sergeant Edward Scali, Police Officer Corey Fischer, and unidentified officers of the New York City Police Department ("NYPD") (collectively, "City Defendants") alleging that NYPD officers violated plaintiffs' Fourth Amendment rights when they executed a no-knock warrant at plaintiffs' residence in search of a suspect who lived in a different unit. Third Am. Compl. ("TAC") ¶¶ 1–11, ECF No. 50. Plaintiffs also bring a claim against the United States and the Federal Bureau of Investigation ("FBI") (collectively, "Federal Defendants") seeking an order requiring them to provide plaintiffs

with documents regarding the execution of the warrant that are not redacted to a greater degree than permitted by law. TAC 3, 10–13.[1]

Plaintiffs initially sued only City Defendants. *See* Compl., ECF No. 1. During discovery, plaintiffs served a series of document requests on the FBI (at the time a non-party) seeking information concerning the raid on plaintiffs' home. *See* ECF Nos. 76-5, 76-11; *see also* TAC ¶ 82. After receiving over 450 pages of heavily redacted documents, plaintiffs amended their complaint to add a claim against Federal Defendants that challenges the redactions as overbroad and seeks an "order compelling [Federal Defendants] to un-redact the response to the Touhy Request." TAC 10–13. Before the Court is Federal Defendants' motion for summary judgment requesting that the Court conclude that the FBI's redactions were proper in all respects. *See* Mot.[2]

The Court has reviewed the parties' submissions, including the redacted version of the FBI's production to plaintiffs and the unredacted version submitted to the Court for *in camera* review. The Court finds that in many instances (though not all), Federal Defendants' choice to redact information is not supported by law. In some instances, information plainly within the scope of plaintiffs' requests has been redacted on the basis that it is "non-responsive." Moreover, a large number of the redactions were made on the

---

[1]    Throughout this Opinion, page numbers for the Certified Administrative Record ("CAR"), ECF No. 61-1, refer to the numbers found in black typeface at the top right corner of each page formatted as "FBI AR 00xxx" rather than the page numbers assigned by the Electronic Case Filing system ("ECF"). All other page numbers for docket filings refer to the page numbers assigned by ECF.

[2]    The Court hereinafter refers to Federal Defendants' Memorandum of Law in Support of their Motion for Summary Judgment, ECF No. 75, as the "Motion" ("Mot."); plaintiff's Memorandum of Law in Opposition to Federal Defendants' Motion, ECF No. 76, as the "Opposition" ("Opp'n"); and Federal Defendants' Reply Memorandum of Law in Further Support of their Motion, ECF No. 77, as the "Reply."

basis of the law enforcement privilege, but the FBI did not follow procedural requirements necessary to invoke the privilege. For these reasons, Federal Defendants' motion for summary judgment is **GRANTED** in part and **DENIED** in part. Moreover, as further explained below, the parties are notified that the Court intends to grant summary judgment for the nonmovant plaintiffs with respect to the remaining issues pursuant to Fed. R. Civ. P. 56(f)(1) following an opportunity for the parties to respond.

## BACKGROUND

On July 16, 2019, just before 6:00 A.M., armed NYPD officers knocked down plaintiffs' front door. TAC ¶¶ 1, 19–20. Officers directed plaintiff Prescod and her children to remain in the living room while other officers searched plaintiffs' apartment. TAC ¶¶ 1, 24. Plaintiff Harrison arrived at the apartment as it was being searched and was prevented from going inside. TAC ¶ 1. After conducting the search and causing significant physical damage to plaintiffs' apartment, officers explained to plaintiffs that they had inadvertently searched the wrong dwelling. TAC ¶ 3. They had meant to execute a warrant to search for an individual named Matthew Elias, who lived in a different unit. TAC ¶ 3.

In July 2022, plaintiffs brought suit against the City of New York and several NYPD officers under 42 U.S.C. § 1983, seeking damages for violation of their Fourth Amendment rights. *See* Compl. During discovery, plaintiffs served a series of document requests on the FBI for documents related to the execution of the warrant. *See* February 15, 2023 *Touhy* Request, Opp'n Ex. D, ECF No. 76-5; August 29, 2023 *Touhy* Request, Opp'n Ex. J, ECF No. 76-11. At the time, the FBI was not a party to the suit. *See* Compl. Each of these requests was titled "*Touhy* Request" and stated that it was seeking documents "pursuant to *United States ex rel. Touhy v. Ragen*, 340 U.S. 462 (1951)." *See* Opp'n Exs. D, J.

3

Federal agencies commonly establish rules governing what information their employees can disclose under various circumstances. *See Carbone v. Martin*, No. 18-cv-03509, 2021 WL 1224102, at *1 (E.D.N.Y. Mar. 31, 2021). In *United States ex rel. Touhy v. Ragen*, the Supreme Court held that an FBI employee who invoked Department of Justice ("DOJ") regulations governing the disclosure of information as a basis to refuse to answer a subpoena could not be held in contempt of court. 340 U.S. 462, 468 (1951). Agency regulations governing the production and disclosure of information for purposes of legal proceedings have since been known as "*Touhy* regulations." The DOJ's *Touhy* regulations are promulgated under the Federal Housekeeping Statute, 5 U.S.C. § 301, which authorizes the head of each executive branch agency to issue regulations "for the government of his department, the conduct of its employees, the distribution and performance of its business, and the custody, use, and preservation of its records, papers, and property." The regulations are codified at 28 C.F.R. §§ 16.21–29. Because the FBI is a component of the DOJ, these regulations apply to *Touhy* requests for documents held by the FBI. *See Meisel v. F.B.I.*, 204 F. Supp. 2d 684, 686 n.1 (S.D.N.Y. 2002).

The DOJ's *Touhy* regulations require that an official considering whether to disclose information in response to a *Touhy* request consider "(1) [w]hether such disclosure is appropriate under the rules of procedure governing the case or matter in which the demand arose, and (2) [w]hether disclosure is appropriate under the relevant substantive law concerning privilege." 28 C.F.R. § 16.26(a). In addition, the regulations prohibit disclosure where one or more of six enumerated factors exist, including if "(1) [d]isclosure would violate a statute . . . or a rule of procedure . . . ; (2) [d]isclosure would violate a specific regulation; (3) [d]isclosure would reveal classified information . . . ; (4) [d]isclosure would reveal a confidential source or informant . . . ; (5) [d]isclosure would

4

reveal investigatory records compiled for law enforcement purposes, and would interfere with enforcement proceedings or disclose investigative techniques and procedures the effectiveness of which would thereby be impaired . . . [; or] (6) [d]isclosure would improperly reveal trade secrets without the owner's consent." 28 C.F.R. § 16.26(b).

Plaintiffs' most recent *Touhy* request, submitted to the FBI on August 29, 2023, sought two categories of records. First, it sought "[t]he identification of all law enforcement officials who were present at 125-60 Sutphin Boulevard, Jamaica, New York 11434, on July 16, 2019, in connection with the arrest of Matthew Elias pursuant to the attached arrest warrant and in connection with FBI Case No. 281D-NY-2129723." Opp'n Ex. J at 3. Second, the request sought "[a]ny FBI or DOJ documents, photographs, or recordings documenting the execution of the . . . arrest warrant." Opp'n Ex. J at 3. As with each of plaintiffs' *Touhy* requests, plaintiffs' most recent request asserted that it complied with the DOJ's *Touhy* regulations. *See* Opp'n Exs. D, J.

After several months of correspondence between plaintiffs and the FBI about the breadth of plaintiffs' *Touhy* request and the timing of the FBI's production, the FBI formally responded to the request on March 12, 2024. *See* March 12, 2024 *Touhy* Response, Opp'n Ex. K, ECF No. 76-12. The FBI noted a variety of objections, bases for withholding documents, and bases for redacting documents. Opp'n Ex. K at 4. The FBI objected that the request was "overbroad and would place an undue burden on the FBI" to the extent the request sought "documents other than those regarding law enforcement's knowledge of the correct apartment at which to execute the arrest warrant." Opp'n Ex. K at 4. The FBI also objected to the extent the request sought information subject to any privilege or otherwise protected from disclosure under the FBI's *Touhy* regulations or any other law. Opp'n Ex. K at 4. Along with these objections, the FBI produced 457 pages of

records, many of which were substantially or completely redacted. *See* CAR 82–538, ECF No. 61-1 (totaling 457 pages, inclusive of the cover sheet and list of redaction codes). The response stated that it constituted a final agency decision in response to the *Touhy* request. Opp'n Ex. K at 4.

Believing the extent of the redactions to be overbroad, plaintiffs sought a court order directing the FBI to provide plaintiffs with unredacted versions of the documents. Specifically, in July 2024, plaintiffs amended their complaint in the instant action to add a claim under Section 706 of the Administrative Procedure Act ("APA") against Federal Defendants. TAC ¶¶ 81–97. Plaintiffs challenge the final agency action of providing documents containing allegedly improper redactions. TAC ¶¶ 91–97; Opp'n 5–6. Plaintiffs assert that Federal Defendants should "be compelled to substantially un-redact the records . . . in order to provide records and information illuminating the extent to which law enforcement was aware of Matthew Elias's address and/or whereabouts." TAC ¶ 97. Specifically, plaintiffs seek "[a]n order compelling [Federal Defendants] to un-redact the response to the Touhy Request except as necessary to protect the names or identifying information of confidential informants, and vacating the agency decision regarding the redactions in its current response to the Touhy Request." TAC 13.

Federal Defendants now move for summary judgment under Federal Rule of Civil Procedure 56 requesting that the Court find that the FBI's redactions were proper. *See* Mot. Plaintiffs filed an opposition, Opp'n, and Federal Defendants filed a reply, Reply. Plaintiffs did not file a cross-motion for summary judgment.

## STANDARD OF REVIEW

### I.    Proper Standard of Review

Plaintiffs and Federal Defendants disagree about the proper legal standard for assessing the present motion. Federal Defendants argue that the Court should engage in a deferential analysis under Section 706 of the APA of whether the redactions were "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A);[3] Mot. 16. Plaintiffs, meanwhile, argue that the APA merely provides the waiver of sovereign immunity necessary to challenge the federal government's actions in court, and that Section 706 is not the appropriate standard of review for the actual validity of Federal Defendants *Touhy* response. Opp'n 12–13. Plaintiffs argue that the Court should instead examine whether the redactions comply with the standards set forth in Federal Rules of Civil Procedure 26 and 45, which typically control the validity of objections to non-party subpoenas. Opp'n 16–18, 22 n.9. Those rules generally permit the discovery of "any nonprivileged matter that is relevant to any party's claim . . . and proportional to the needs of the case," Fed. R. Civ. P. 26(b)(1), while disallowing subpoenas that "require[] disclosure of privileged or other protected matter [or] subject[] a person to undue burden," Fed. R. Civ. P. 45(d)(3).

The Second Circuit has explicitly left undecided whether a non-party federal agency's refusal to comply with a demand to produce documents for purposes of civil litigation should be reviewed under the standard contained in Section 706 of the APA or the standard contained in Federal Rules of Civil Procedure 26 and 45. *See U.S. E.P.A. v. Gen. Elec. Co.*, 212 F.3d 689, 690 (2d Cir. 2000); *see also Manzo v. Stanley Black &*

---

[3]    Throughout this Opinion, the Court omits all internal quotation marks, footnotes, and citations, and adopts all alterations, unless otherwise indicated.

*Decker, Inc.*, No. 13-cv-03963, 2017 WL 1194651, at *7 (E.D.N.Y. Mar. 30, 2017). The question is also the subject of an "entrenched circuit split," with the D.C. Circuit and Ninth Circuit applying the standard of the Federal Rules and the Fourth Circuit and Eleventh Circuit applying the arbitrary and capricious standard of Section 706. Zoe Niesel, *Terrible Touhy: Navigating Judicial Review of an Agency's Response to Third-Party Subpoenas*, 41 Cardozo L. Rev. 1499, 1502 (2020). In light of this open question, district courts within the Second Circuit have taken a variety of approaches. "[S]ome have opted for one standard over the other," while others "choose the standard that is more favorable to the ultimately losing party, since the result would presumptively be the same under the other standard that is less deferential to that party." *Manzo*, 2017 WL 1194651, at *7. In other instances, district courts will "analyze the case before them under both standards, particularly where the end result is the same." *Id.* (citing *Solomon v. Nassau County*, 274 F.R.D. 455, 458 (E.D.N.Y. 2011)).

Federal Defendants argue that even if it is an open question which standard applies in certain cases, in the present case it must be the APA standard that applies because the claim contained in plaintiffs' third amended complaint "is not a discovery dispute governed by Rules 26 or 45" but rather "is brought pursuant to the APA" and "challenges the redactions as arbitrary and capricious." Reply 5. Federal Defendants insist that courts only apply the standard of the Federal Rules when a "challenge to a non-party agency's subpoena response is brought by a motion to compel" rather than by an APA Section 706 claim. Reply 6 n.1. Plaintiffs, on the other hand, contend that APA Section 706 is only a vehicle that waives the federal government's sovereign immunity and is not dispositive of which standard applies. Opp'n 12–16.

8

The Court finds that it is not necessary to resolve which standard applies at this juncture. The Court examines Federal Defendants' actions under both standards and concludes that, under either one, the Court would reach the same disposition on Federal Defendants' motion.

## II.    Review Under the Standard of the APA

Reviewing Federal Defendants' release of documents as a final agency action under Section 706 of the APA requires the Court to examine whether the redactions were "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). Review under the arbitrary and capricious standard "is necessarily narrow," and the Court may not "substitute its judgment for that of the agency." *Islander E. Pipeline Co., v. McCarthy*, 525 F.3d 141, 150 (2d Cir. 2008). Moreover, the Court is "confined to the administrative record compiled by that agency when it made the decision." *Nat'l Audubon Soc'y v. Hoffman*, 132 F.3d 7, 14 (2d Cir. 1997). An agency's decision counts as arbitrary and capricious if the agency "offered an explanation for its decision that runs counter to the evidence before the agency[] or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Motor Vehicle Mfrs. Ass'n of the U.S. v. State Farm Mut. Auto. Ins. Co.,* 463 U.S. 29, 43 (1983). An agency's decision also counts as arbitrary and capricious if the agency did not "set out a satisfactory explanation including a rational connection between the facts found and the choice made." *Karpova v. Snow*, 497 F.3d 262, 268 (2d Cir. 2007).

Summary judgment is generally an appropriate vehicle to resolve a challenge to an agency action under the APA, but "the usual summary judgment standard under Federal Rule of Civil Procedure 56 does not apply." *Saleh v. Blinken*, 596 F. Supp. 3d 405, 413 (E.D.N.Y. 2022), *aff'd*, No. 22-1168, 2023 WL 5091819 (2d Cir. Aug. 9, 2023). Instead, "the

district judge sits as an appellate tribunal" and "the entire case on review is a question of law." *Kapoor v. USCIS*, 763 F. Supp. 3d 247, 254 (E.D.N.Y. 2025) (quoting *Am. Bioscience, Inc. v. Thompson*, 269 F.3d 1077, 1083 (D.C. Cir. 2001)). The "Court's role is not to decide whether there is a genuine dispute of material fact, but [rather] to decide, as a matter of law, whether the agency action is consistent with the APA standard of review." *Id.* An agency's legal determinations receive no deference under the APA. *Loper Bright Enters. v. Raimondo*, 603 U.S. 369 (2024). Instead, "the reviewing court shall decide all relevant questions of law" on a de novo basis. 5 U.S.C. § 706; *Loper Bright*, 603 U.S. at 393 n.4.

If a district court finds that an agency's action was arbitrary and capricious or otherwise impermissible under APA, the proper remedy is to remand to the agency for a do-over. *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985); *see also OhioHealth Corp. v. U.S. Dep't of Veteran Affs.*, No. 14-cv-00292, 2014 WL 4660092, at *7 (S.D. Ohio Sept. 17, 2014). On remand, the agency can engage in "additional investigation or explanation," *Fla. Power*, 470 U.S. at 744, or "deal with the problem afresh by taking new agency action," *DHS v. Regents of the Univ. of Cal.*, 591 U.S. 1, 21 (2020).

## III.    Review Under the Standard of the Federal Rules

Reviewing Federal Defendants' response to plaintiffs' document request under the standard established by the Federal Rules of Civil Procedure calls for verifying that the request is consistent with Rules 26 and 45 of the Federal Rules of Civil Procedure, as well as the agency's *Touhy* regulations. *See In re Terrorist Attacks on Sept. 11, 2001*, 523 F. Supp. 3d 478, 488–90 (S.D.N.Y. 2021). First, Rule 26(b)(1) sets the scope of discovery in federal court litigation, specifying that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Factors the Court considers in this analysis

include "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id.* Discovery also should generally be limited if, among other reasons, the information "sought is unreasonably cumulative or duplicative" or the material in question "can be obtained from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C)(i).

Rules 26 and 45 of the Federal Rules of Civil Procedure require courts to be sensitive to the burdens imposed by discovery on non-parties, and courts must be particularly solicitous about avoiding undue burden on the government and its employees. "Discovery under Rules 26 and 45 must properly accommodate the government's serious and legitimate concern that its employees not be commandeered into service by private litigants to the detriment of the smooth functioning of government operations." *In re Terrorist Attacks*, 523 F. Supp. 3d at 489–490 (quoting *Exxon Shipping Co. v. U.S. Dep't of the Interior*, 34 F.3d 774, 778–79 (9th Cir. 1994)).

Moreover, "it is clear from the Department of Justice regulations governing the disclosure of confidential information, as well as the common law doctrine in *Touhy* and the litany of succeeding case law, that the United States may restrict the release of its information." *Id.* at 490 (quoting *Edwards v. U.S. Dep't of Just.*, 43 F.3d 312, 317 (11th Cir. 1994)). "The decision about production rests with the agency, based on the factors provided in the agency's *Touhy* regulations. Even if the information [sought] is relevant to the underlying litigation, [the seeking party] is not automatically entitled to the documents it has requested." *Id.* (quoting *Agility Pub. Warehousing Co. K.S.C.P. v. U.S. Dep't of Def.*, 246 F. Supp. 3d 34, 44 (D.D.C. 2017)).

## DISCUSSION

### I.    The FBI's Redactions

Plaintiffs' most recent *Touhy* request sought two categories of information: "[t]he identification of all law enforcement officials who were present at 125-60 Sutphin Boulevard . . . on July 16, 2019, in connection with the arrest of Matthew Elias" as well as "[a]ny FBI or DOJ documents, photographs, or recordings documenting the execution of the . . . arrest warrant." Opp'n Ex. J at 3.

In response, the FBI produced 457 pages of documents, most of which are heavily or entirely redacted. *See generally* CAR. Each redaction is tagged with one or more of seven "redaction codes," which each correspond to a distinct basis for redaction. *See* CAR 86. Those codes are: code "F" (FBI file numbers), code "M" (information which is not responsive), code "O-1" (information originating with a non-federal entity), code "P-1" (information the disclosure of which would be an unwarranted invasion of personal privacy), code "S" (personal identifying information related to law enforcement personnel), code "G" (information covered by law enforcement privilege because disclosure could harm an investigation or investigative interest), and code "H" (information covered by law enforcement privilege because disclosure would impair the effectiveness of an investigative method or procedure).

Code F was invoked with respect to three (3) documents, code M was invoked with respect to one hundred and thirty seven (137) documents, code O-1 was invoked with respect to twenty four (24) documents, code P-1 was invoked with respect to one hundred and seventeen (117) documents, code S was invoked with respect to forty three (43) documents, code G was invoked with respect to one hundred and twenty one (121) documents, and code H was invoked with respect to twenty five (25) documents. *See*

Redaction Log for Certified Administrative Record ("Redaction Log"), ECF No. 66-1. Many of the documents were redacted on the basis of more than one redaction code. *See* Redaction Log.

In the following sections, the Court reviews each purported basis for redaction under both the standard of the APA and the standard of the Federal Rules.

### A.    Redactions of Purportedly Non-Responsive Information (Code M)

One hundred and thirty seven documents contain redactions, labeled with code M, of "information which is not responsive." CAR 86. The FBI of course acts lawfully when it withholds information that is in fact not responsive to the plaintiffs' request. Plaintiffs furthermore have explicitly disclaimed any attempt to seek nonresponsive information. Opp'n 18 ("Plaintiffs do not seek information that is not responsive or irrelevant"); *see also* Opp'n 23 n.10 ("Plaintiffs are not seeking nonresponsive material"). Upon examination, however, the Court concludes that the FBI has redacted information on the basis that the information is not responsive even though it is in fact encompassed by plaintiffs' most recent *Touhy* request.

Rather than addressing all one hundred and thirty seven documents in sequence, the Court begins by discussing the first four documents that contain redactions on the basis of code M.

### i.    Document Located at CAR 82–84

The FBI's first redaction made on the basis that the redacted information is not responsive occurs within a document located at CAR 82–84. The FBI states that two types of information were redacted in this document as not responsive. First, the FBI redacted "details of Matthew Elias's arrest" on the basis that the information was not responsive. Redaction Log 1. The Court concludes that "details of Matthew Elias's arrest" are plainly

responsive to the request for "[a]ny FBI or DOJ document[] . . . documenting the execution of [Matthew Elias's] arrest warrant." Opp'n Ex. J at 3. Although it is conceivably possible that the FBI could redact this information for a different lawful reason, the FBI cannot redact "details of Matthew Elias's arrest" on the basis that it is not responsive to a request for "documents . . . documenting the execution of [Matthew Elias's] arrest warrant." Opp'n Ex. J at 3.

In this respect, the Court finds the FBI's actions to be arbitrary and capricious. By claiming that information is "not responsive" when it is plainly encompassed by plaintiffs' *Touhy* request, and by providing no further explanation of how the FBI reached the conclusion that the redacted information is not responsive, the FBI has failed to "set out a satisfactory explanation including a rational connection between the facts found and the choice made." *Karpova*, 497 F.3d at 268.

The FBI claims this document requires redaction because of a second type of allegedly not responsive information: "details of Matthew Elias's . . . personally identifiable information (PII)." Redaction Log 1. A footnote in the redaction log explains that "Elias's PII includes personal non-responsive information, such as information about his health or family." Redaction Log 1 n.2. The Court finds that this constitutes a "satisfactory explanation" of why the redacted information is not responsive. *See Karpova*, 497 F.3d at 268. It is clear from the FBI's explanation that the information redacted on this basis qualifies neither as information identifying law enforcement officials present for the raid, nor as records "documenting the execution of the . . . arrest warrant." Opp'n Ex. J at 3.

### ii.    *Document Located at CAR 87*

The second document containing redactions on the basis that the redacted information is not responsive is located at CAR 87. *See* Redaction Log 1. The FBI states

that three types of non-responsive information were redacted. First, the FBI redacted "information about unrelated ongoing case(s)." Redaction Log 1. The Court agrees, and the plaintiffs do not dispute, that information about "unrelated . . . cases" is not responsive. *See* Opp'n 12.

Second, the FBI redacted "law enforcement personnel's PII." Redaction Log 1. A footnote attached to that explanation states that "Law enforcement personnel's PII includes their name, title, agency, office, squad, phone number, email address, and other personal information, such as information related to their family." Redaction Log 1 n.3. The FBI claims that this information is being redacted because it is "not responsive" and the purported *reason* it is not responsive is that it is "law enforcement personnel's PII." Redaction Log 1. This is an important difference from redactions made on the basis of code "S," which signals information—whether responsive or not responsive—that is redacted because it is "personal identifying information related to law enforcement personnel and their family members, the disclosure of which is routinely guarded for security reasons." CAR 86.

The Court disagrees that all information in the category of "law enforcement personnel's PII" is necessarily unresponsive to plaintiffs' request. For example, the "name, title, agency, office, [and] squad" of law enforcement officers, Redaction Log 1 n.3, falls plainly within a request that the FBI provide "the *identification* of all law enforcement officials who were present" during the raid, Opp'n Ex. J at 3 (emphasis added). On the other hand, the Court agrees that information such as an officer's "phone number, email address, and . . . information related to their family," Redaction Log 1 n.3, does not fall within the scope of information that plaintiffs seek.

Third, the FBI redacted "information about law enforcement personnel's training." Redaction Log 1. Plaintiffs did not seek information about training, and thus the Court agrees that information regarding training can be redacted as nonresponsive.

### iii.    Document Located at CAR 88

The third document containing redactions on the basis that the redacted information is not responsive is located at CAR 88. Redaction Log 2. The FBI states that two types of non-responsive information were redacted. First, the FBI redacted "information about unrelated ongoing case(s)." Redaction Log 2. As stated above, this is a proper basis for redaction as not responsive.

Second, the FBI redacted "tactical information related to operational plan for Elias's arrest." Redaction Log 2. The Court finds that this information is plainly within the scope of information "documenting the execution of the . . . arrest warrant." Opp'n Ex. J at 3. Accordingly, the Court finds that the FBI's choice to redact this information on the basis that it is not responsive was arbitrary and capricious. *See Karpova*, 497 F.3d at 268.

### iv.    Document Located at CAR 89–95

The fourth document containing redactions on the basis that the redacted information is not responsive is located at CAR 89–95. Redaction Log 2–3. The FBI states that five types of non-responsive information were redacted. First, the FBI redacted the "date/time stamp on document." Redaction Log 3. Because the date and time appear to be an after-the-fact stamp applied in the course of evidence preparation, rather than information constituting part of the original substance, the Court holds that it was proper for the FBI to redact the stamp as non-responsive.

Second, the FBI redacted an "attachment name." Redaction Log 3. The Court agrees with the FBI that the digital filename of a document sent by email neither documents the execution of the warrant nor identifies officers who were present.

Third, the FBI redacted an "FBI non-public intranet web address." Redaction Log 3. The Court agrees that this information is not encompassed by either of the categories of information sought by plaintiffs.

Fourth, the FBI redacted "law enforcement personnel's PII, including name of law enforcement personnel not present for Elias's arrest." Redaction Log 3. The Court agrees that the names of "law enforcement personnel not present for Elias's arrest" are not responsive to plaintiffs' request, which was only for the identification of officers "present" at the raid. Opp'n Ex. J at 3. With respect to all other "law enforcement personnel's PII" redacted for purportedly not being responsive to plaintiffs' request, as stated in section I.A.ii, *supra*, the mere fact that information is "law enforcement personnel's PII" does not establish that it falls outside of plaintiffs' request. The FBI must either offer a valid explanation of why this information is not responsive, redact this information on a different basis, or unredact the information.

Finally, the FBI redacted "tactical information related to operational plans for arrests of Elias and his co-defendants." Redaction Log 3. The Court concludes that information exclusively concerning the arrest of co-defendants is indeed beyond the scope of plaintiffs' request. Plaintiffs only requested "information documenting the execution of the *attached* arrest warrant," Opp'n Ex. J at 3 (emphasis added), and the attached arrest warrant concerned only Elias, Opp'n Ex. M at 2–4, ECF No. 76-14. However, the Court also concludes that "information related to operational plans for arrest[] of Elias" is plainly within the scope of "information documenting the execution of the attached arrest

17

warrant." The FBI acted arbitrarily and capriciously when it redacted this information on the basis that it was not responsive to the plaintiffs' request. *See also* Opp'n at 23 n.10 ("Although the information behind the codefendants' arrests *may* be nonresponsive . . . , the tactics and operations surrounding Elias's arrest is most certainly relevant to the Harrison Family's claims." (emphasis in original)).

v.    *Remaining Code M Redactions*

The Court applies similar reasoning to the remaining 100+ documents containing redactions on the basis of code M throughout the entirety of the certified administrative record. *See* Redaction Log. The Court concludes that the following have been properly redacted as nonresponsive: (1) "tactical information related to operational plans for arrests of Elias['s] . . . codefendants"; (2) "references to Elias's co-defendants"; and (3) the "name[s] of law enforcement personnel not present for Elias's arrest." Redaction Log *passim*. The Court also concludes that the FBI has failed to "set out a satisfactory explanation including a rational connection between the facts found and the choice made," *Karpova*, 497 F.3d at 268, in every instance where it redacted the following information as not responsive: (1) "tactical information related to operational plans for arrest[] of Elias" and (2) "law enforcement personnel's PII" unless such information is not related to the "execution of the . . . arrest warrant" and does not "identif[y] [any] law enforcement officials who were present" during the raid. Redaction Log *passim*. For all of the information redacted on the basis of code M with either of these explanations, the FBI must either offer a new, valid explanation of why this information is not responsive, redact this information on a different basis, or unredact the information.

B.    Redactions on the Basis of Invading Personal Privacy (Code P-1)

One hundred and seventeen (117) documents contain redactions, labeled with code P-1, of "information, the disclosure of which would be an unwarranted invasion of personal privacy." CAR 86. The FBI's motion for summary judgment explains that these 117 redactions were ultimately made on the basis of the Privacy Act of 1974, 5 U.S.C. § 552a. The FBI explains that the "DOJ's *Touhy* regulations prohibit disclosure when such disclosure would violate a statute" and "[o]ne such statute is the Privacy Act, which generally prevents federal agencies from disclosing 'any record which is contained in a system of records to any person, or to another agency, except [with] written consent of[] the individual to whom the record pertains, unless disclosure' falls within one of twelve delineated exceptions." Mot. 24–25 (quoting 5 U.S.C. § 552a(b)). One of the twelve exceptions enacted by Congress is for all information disclosed "pursuant to the order of a court of competent jurisdiction." 5 U.S.C. § 552a(b)(12). In response to Federal Defendants' arguments concerning the Privacy Act, plaintiffs offer several reasons why the Court should not construe the Privacy Act to be a statute preventing the disclosure of records in this case. Opp'n 25–30.

The Court finds it unnecessary to resolve the Privacy Act issue at this stage. Although no Court order was in effect at the time the FBI sent its *Touhy* response to plaintiffs, plaintiffs are now explicitly seeking a court "order compelling the [Federal D]efendants to un-redact the response to the *Touhy* Request." TAC 13. Such an order, if granted, would moot any argument that the information must be redacted on the basis of the Privacy Act. Moreover, courts routinely grant orders authorizing the disclosure of information for litigation purposes notwithstanding the Privacy Act. *See, e.g.*, *Days v. Eastchester Police Dep't*, No. 18-cv-11538, 2021 WL 75173, at *1 (S.D.N.Y. Jan. 8, 2021).

These orders typically include appropriate measures to ensure the continued confidentiality of private information, such as a protective order. *Id.*

To streamline the Privacy Act issue, the Court directs the parties as follows. Plaintiffs, or plaintiffs jointly with Federal Defendants, within 30 days of this order, may move for an order of this Court authorizing the disclosure of information encompassed by plaintiffs' *Touhy* request that the FBI believes must be redacted on the basis of the Privacy Act. The order sought should include appropriate measures to safeguard the information, such as an extension or modification of the stipulated protective order currently in effect. *See* Stipulation and Proposed Order for Protection of Materials and Information, ECF No. 21.

For information that the FBI believes must be redacted on the basis of both the Privacy Act and a different, independent reason, the order will merely authorize the FBI to disclose information notwithstanding the Privacy Act—it will not order the FBI to un-redact information that is properly redacted on a distinct basis. *See Days*, 2021 WL 75173, at *1 ("Pursuant to 5 U.S.C. § 552a(b)([12]), this Order authorizes the Government to produce information that otherwise would be prohibited from disclosure under the Privacy Act . . . . To the extent the Privacy Act allows the disclosure of information pursuant to a court order, this Order constitutes such a court order and authorizes the disclosure of that information. Nothing in this paragraph, however, shall require production of information that is prohibited from disclosure (even with the entry of this Order) by other applicable privileges, statutes, regulations, or authorities.").

C.    Redactions on the Basis of the Law Enforcement Privilege
(Codes G and H)

Two categories of redacted information are codes "G" and "H," which correspond to the law enforcement privilege. Code G reflects "The Law Enforcement Privilege - The Disclosure Of This Information Could Cause Harm To, Impede, Impair, Or Hinder An Investigation And/Or An Investigative Interest of The FBI." CAR 86. Meanwhile, Code H corresponds to "The Law Enforcement Privilege - The Disclosure Of This Information Would Impede Or Impair The Effectiveness Of An Investigative Technique, Method Or Procedure of The FBI." CAR 86. For the following reasons, the Court concludes that the FBI has not followed proper procedural requirements necessary to invoke the law enforcement privilege.

i.    *Law Enforcement Privilege in the Second Circuit*

The "law enforcement privilege" (sometimes called "law enforcement investigatory privilege") is a recognized common law privilege that protects the sensitive interests of law enforcement agencies. *Raphael v. Aetna Cas. & Sur. Co.*, 744 F. Supp. 71, 74 (S.D.N.Y. 1990). The Second Circuit gave its most detailed guidance on the law enforcement privilege in the 2010 case *In re The City of New York*, 607 F.3d 923 (2d Cir. 2010) ("*City of NY*"). The opinion explains that the purpose of the law enforcement privilege is "to prevent disclosure of law enforcement techniques and procedures, to preserve the confidentiality of sources, to protect witness and law enforcement personnel, to safeguard the privacy of individuals involved in an investigation, and otherwise to prevent interference with an investigation." *City of NY*, 607 F.3d at 941. The opinion also explains that law enforcement privilege is a qualified privilege rather than an absolute privilege, which means that there

are circumstances where information subject to the privilege must nevertheless be disclosed. *Id.* at 940.

Analyzing an assertion of law enforcement privilege requires the application of a multi-step framework. At the outset, "a district court must first determine if the law enforcement privilege applies to the documents at issue." *Id.* at 944. The Second Circuit explicitly "adopt[ed] the holding of the District of Columbia Circuit that the party asserting the law enforcement privilege bears the burden of showing that the privilege applies to the documents in question." *Id.* at 944 (citing *In re Sealed Case*, 856 F.2d 268, 271–72 (D.C. Cir. 1988)). In order to "meet this burden, the party asserting the law enforcement privilege must show that the documents contain information that the law enforcement privilege is intended to protect[, such as] information pertaining to law enforcement techniques and procedures, information that would undermine the confidentiality of sources, information that would endanger witness and law enforcement personnel, . . . and information that would otherwise interfere with an investigation." *Id.*

If the court reviewing the assertion of privilege is satisfied that "the party asserting the law enforcement privilege [has met its] burden of showing that the privilege applies," then the analysis moves to the next stage. *Id.* at 948. The D.C. Circuit in *In re Sealed Case* adopted a balancing test under which the "public interest in nondisclosure must be balanced against the need of a particular litigant for access to the privileged information." 856 F.2d at 272. The Second Circuit again explicitly "adopt[ed] this sensible balancing test as the law of our Circuit." *City of NY*, 607 F.3d at 945. At this stage, there is a "strong presumption against lifting the privilege," and "[t]o rebut that presumption, the party seeking disclosure must show (1) that its suit is non-frivolous and brought in good faith, (2) that the information sought is not available through other discovery or from other

sources, and (3) that the information sought is important to the party's case." *Id.* If the party seeking disclosure successfully rebuts the presumption, then the reviewing court next balances "the public interest in nondisclosure against the need of a particular litigant for access to the privileged information." *Id.* Disclosure "is required only if that compelling need outweighs the public interest in nondisclosure." *Id.*

### ii.    *The Three Procedural Requirements*

A dispositive issue in the present case arises at the first step of the analysis, where the party asserting the law enforcement privilege (here, the FBI) bears the burden of showing that the documents in fact "contain information that the law enforcement privilege is intended to protect." *City of NY*, 607 F.3d at 944. Though it is clear that the law enforcement agency bears the burden, the natural next question is what the agency must do to meet the burden. The Second Circuit's opinion in *City of New York* does not address this directly. But the D.C. Circuit's opinion in *In re Sealed Case*, whose reasoning and tests the Second Circuit adopts, holds that for the government to meet its burden of demonstrating that information is subject to the law enforcement privilege, "three requirements must be met: (1) there must be a formal claim of privilege by the head of the department having control over the requested information; (2) assertion of the privilege must be based on actual personal consideration by that official; and (3) the information for which the privilege is claimed must be specified, with an explanation why it properly falls within the scope of the privilege." *In re Sealed Case*, 856 F.2d at 271. According to the D.C. Circuit, "[t]hese conditions ensure that the privilege is presented in a deliberate, considered, and reasonably specific manner." *Id.* In a case following *In re Sealed Case*, the D.C. Circuit elaborated on the "head of the department" requirement, noting that this did not have to be the ultimate head of the entire agency (e.g. the U.S. Attorney General or the

Director of the FBI), but rather just the head of the relevant office or division. *Landry v. F.D.I.C.*, 204 F.3d 1125, 1135-36 (D.C. Cir. 2000).

Since the Second Circuit's decision in *City of NY*, several district courts within the Second Circuit have read *City of NY* to incorporate the three procedural requirements. *See, e.g.*, *United States v. Wey*, 252 F. Supp. 3d 237, 250 (S.D.N.Y. 2017) (Nathan, J.) ("The [Second Circuit] has expressly adopted the holding of the [D.C.] Circuit that the party asserting the law enforcement privilege bears the burden of showing that the privilege applies to the documents in question. To carry that burden, the asserting party must meet three procedural requirements. . . ."); *City of New York v. FedEx Inc.*, No. 13-cv-09173, 2017 WL 4155410, at *4 (S.D.N.Y. Sept. 19, 2017) (Ramos, J.) ("The parties agree that the party asserting the law enforcement privilege bears the burden of showing that the privilege applies, [but] dispute what that burden entails. . . . Post-[*City of NY*] decisions in this Circuit continue to hold that the burden . . . cannot be discharged by conclusory or *ipse dixit* assertions. . . . In its privilege logs, the State merely declares that the documents reflect 'law enforcement techniques and procedures' . . . . These are mere recitations of the categories of information that the law enforcement privilege is designed to protect . . . [and do] not provide the requisite details."). At least one district court has also come to the opposite view—that because the Second Circuit did not explicitly mention the "procedural component set forth in *In re Sealed Case*," district courts in the Second Circuit should not assume that it applies. *United States v. Sixty-One Thousand Nine Hundred Dollars*, No. 10-cv-01866, 2010 WL 4689442, at *2, 4 (E.D.N.Y. Nov. 10, 2010) ("*United States v. $61,900*").

This Court follows the bulk of district courts within the Second Circuit to address the matter in the aftermath of *City of NY* and holds that the three procedural requirements

apply. The Second Circuit's opinion extensively adopted the reasoning and tests of the D.C. Circuit, and the best reading of that opinion is that that law enforcement agencies litigating in the Second Circuit must comply with the same three procedural requirements that the D.C. Circuit requires to invoke the law enforcement privilege.

The opinion in *United States v. $61,900* argues that because the Second Circuit explicitly mentioned it was adopting several tests from *In re Sealed Case* but said nothing about whether it was adopting the procedural requirements, that should be read as the Second Circuit declining to adopt the procedural requirements. 2010 WL 4689442, at *2. This Court respectfully disagrees. First, the district court and the Second Circuit in *City of NY* were adjudicating a case where the party asserting the law enforcement privilege in fact complied with the procedural requirements. The NYPD (the party asserting the privilege) in that case provided a declaration from a senior official of the law enforcement agency claiming the privilege—specifically, a declaration from the Deputy Commissioner of Intelligence of the New York City Police Department, David Cohen—noting that he had engaged in personal consideration of the issue and explaining why the documents properly fell within the scope of the privilege. *See* Decl. of David Cohen ("Cohen Decl.") ¶¶ 1–7, *Schiller v. City of New York*, No. 04-cv-07922 (S.D.N.Y. Aug. 23, 2007), ECF No. 264 ("I have general oversight of the Intelligence Division . . . . I have personal knowledge of the facts set forth below . . . . I have personally read all of the documents [over which the City asserts the law enforcement privilege] . . . . Release of these documents or redacted portions thereof would reveal information about sources and methods. Consequently, release would severely damage the NYPD intelligence program, and in turn, seriously undercut its ability to contribute to the security and safety of New York City . . . ."). Further, the NYPD went beyond mere *ipse dixit* assertions that certain information was subject to

25

the law enforcement privilege and articulated an explanation of *why* the withheld information was covered. *See, e.g.,* Cohen Decl. ¶¶ 17–18, *Schiller*, No. 04-cv-07922 ("The specific ways in which disclosure of [this] information" can "facilitate the . . . disclosure of the identity of an undercover officer or confidential informant" include that revealing "[d]ate time and location information . . . provides a clear indication of the undercover officer's physical presence at a particular place and at a specific point in time" risking the possibility that "others present at the same time could determine the identity of the officer.")

The fact that the Second Circuit in *City of NY* was reviewing a case where the party asserting the privilege complied with these procedural requirements undercuts the idea that the Second Circuit impliedly communicated to district courts that it did not believe that the procedural requirements were necessary. Had the Second Circuit meant to adopt the holdings and reasoning of *In re Sealed Case* in every respect *except* for the procedural requirements, in all likelihood it would have so stated. Given that the issue of whether the three procedural requirements applied was not before the Court, it was not necessary for the Second Circuit to opine on it one way or the other.

### iii.    *In Camera Review*

The FBI argues that the fact that the Court has had the opportunity to review the unredacted documents *in camera* means that the Court can evaluate whether or not the FBI's claims of privilege are legitimate. Reply 9. The Court disagrees. *In camera* review of the unredacted documents cannot, at least here, substitute for compliance with the procedural requirements or replace the adversarial presentation of issues that the procedural requirements facilitate. "The reason for requiring the government to provide a situation-specific affidavit is to provide the adversary with a fair opportunity to challenge

26

the bases for the assertion of the privilege. Providing that opportunity is important to the court as well because in our adversary system the court looks to opposing parties to help it probe and measure the strength of the parties' submissions." *United States v. Painting Known as "Le Marche"*, No. 06-cv-12994, 2008 WL 2600659, at *3 (S.D.N.Y. June 25, 2008). Even though the Court has been provided the unredacted documents *in camera*, the Court is better positioned to evaluate whether or not the FBI has or has not met its burden to "show that the documents contain information that the law enforcement privilege is intended to protect" *City of NY*, 607 F.3d at 944, with the benefit of an adversarial party able to call the Court's attention to arguments and considerations not offered by Federal Defendants.

### iv. Potential Differences Between Common-Law Law Enforcement Privilege and 28 C.F.R. § 16.26(b)(5)

Federal Defendants also cite a Fifth Circuit case to argue that "the FBI's assertion of a privilege under § 16.26(b)(5) is entitled to greater deference on APA review than a typical assertion of the law enforcement privilege in a non-APA case," and accordingly, the three procedural requirements should not apply in this case. *See* Mot. 20 (citing *CF Indus., Inc. v. Dep't of Just. Bureau of Alcohol, Tobacco, Firearms, & Explosives*, 692 F. App'x 177, 182 (5th Cir. 2017)). Without taking a position on the argument's merits, the Court finds this argument immaterial. All of the code G and code H redactions were made explicitly on the basis of "THE LAW ENFORCEMENT PRIVILEGE" rather than on the basis of 28 C.F.R. § 16.26(b)(5). CAR 86 (capitalization in original). The law enforcement privilege and Section 16.26(b)(5) are not identical. Among other differences, the law enforcement privilege is a common law privilege while Section 16.26(b)(5) is a regulatory provision promulgated by the Department of Justice as part of the DOJ's *Touhy*

regulations. They may also not cover precisely the same material. *Compare* 28 C.F.R. § 16.26(b)(5) (covering only disclosures that satisfy two conjunctive conditions, namely "disclosures that would reveal investigatory records compiled for law enforcement purposes, *and* would interfere with enforcement proceedings or disclose investigative techniques and procedures the effectiveness of which would thereby be impaired" (emphasis added)), *with City of NY*, 607 F.3d at 941 (explaining that the law enforcement privilege operates "to prevent disclosure of law enforcement techniques and procedures, to preserve the confidentiality of sources, to protect witness and law enforcement personnel, to safeguard the privacy of individuals involved in an investigation, and otherwise to prevent interference with an investigation"). Because the redaction log provided by Federal Defendants explicitly invokes "the law enforcement privilege" as the basis for the code H and code G redactions, the Court declines to assume that the Federal Defendants were actually invoking Section 16.26(b)(5) as the basis for codes H and G.

The FBI's own statements reflect that it is aware that the law enforcement privilege and Section 16.26(b)(5) are distinct. For example, the first letter that the FBI sent plaintiffs in response to plaintiffs' initial *Touhy* request contains a section titled "Applicable Privileges" that includes separate paragraphs listing distinct bases for withholding information. *See* March 29, 2023 *Touhy* Response 4–5, Opp'n Ex. E, ECF No. 76-6. The FBI writes "*First*, disclosure of the requested categories would likely 'reveal investigatory records compiled for law enforcement purposes, and would interfere with enforcement proceedings . . . .' 28 C.F.R. § 16.26(b)(5)." Opp'n Ex. E at 4–5 (emphasis in original). Then, in a new paragraph, the FBI writes "*Second*, the requested documents and information are likely protected from disclosure by the law enforcement privilege." Opp'n Ex. E at 5 (emphasis in original). When the FBI ultimately released the bulk of the records, it made

28

redactions tagged with codes H and G explicitly on the basis of "the law enforcement privilege," with no mention of Section 16.26(b)(5). CAR 86. The Court therefore concludes that the code H and code G redactions were made on the basis of the law enforcement privilege and that arguments regarding Section 16.26(b)(5) are inapplicable.

Furthermore, the Court notes that if Federal Defendants had stated that Section 16.26(b)(5) was the basis for the code H and code G redactions, the Court would need to address—though declines to reach these issues now—whether the redacted material falls under the text of Section 16.26(b)(5) and whether or not requirements applicable to the law enforcement privilege also apply to Section 16.26(b)(5).

### v.    Application to Federal Defendants

In the present case, Federal Defendants did not comply with any of the three procedural requirements. Its assertions of law enforcement privileged are based exclusively on representations of counsel. The FBI has not provided plaintiffs or the Court with a declaration or affidavit by the head of the relevant division of the FBI "having control over the requested information" that states that the "assertion of the privilege [is] based on actual personal consideration by that official." *In re Sealed Case*, 856 F.2d at 271. Moreover, the privilege log supplied by the FBI is simply a barebones table of which redaction codes the FBI asserts apply to each page. *See* Redaction Log. The FBI has made no attempt to actually explain what information it is claiming the privilege over, nor has the FBI offered "an explanation why it properly falls within the scope of the privilege." *In re Sealed Case*, 856 F.2d at 271. Because Federal Defendants have not complied with the three procedural requirements, the Court concludes that it will not—at this stage—credit Federal Defendants' assertions of law enforcement privilege.

D.    Redactions for Other Reasons (Codes F, S, and O-1)

Federal Defendants redacted documents on three additional bases. First, Federal Defendants redacted, as code F, "administratively designated FBI file numbers, which represent individuals or matters which are not the subject of this file." CAR 86. The Court concludes that these redactions are appropriate on the basis that this information is not responsive to plaintiffs' requests.

Second, Federal Defendants redacted, under code S, "personal identifying information related to law enforcement personnel and their family members, the disclosure of which is routinely guarded for security reasons." CAR 86. Federal Defendants argue that these redactions are appropriate on the basis of 28 C.F.R. § 16.26(b)(5) and on the basis of 28 C.F.R. § 16.26(a)(2), insofar as the latter incorporates the law enforcement privilege as a "relevant substantive law concerning privilege." Mot. 19–24. The Court does not agree that § 16.26(b)(5) covers this information. Section 16.26(b)(5) covers information that satisfies three elements. The first element is that the information must reveal "investigatory records compiled for law enforcement purposes." 28 C.F.R. § 16.26(b)(5). However, although "personal identifying information related to law enforcement personnel and their family members" may be extremely sensitive, such information is not an "investigatory record[] compiled for law enforcement purposes." 28 C.F.R. § 16.26(b)(5). With respect to the argument that the information redacted on the basis of code S is protected by the substantive law of the law enforcement privilege, the Court holds as it did above that Federal Defendants must comply with the three procedural requirements in order to invoke the privilege. *See* Section I.C.ii, *supra*.

Finally, Federal Defendants redacted twenty-four documents with code O-1, corresponding to "information originating with a non-federal entity." Redaction Log

*passim*. The FBI notes in each instance that "This is not an FBI document, and as such was not produced by the Federal Government." Redaction Log *passim*. The Court holds that this information is not responsive to the request for "*[a]ny FBI or DOJ documents*, photographs, or recordings documenting the execution of the . . . arrest warrant." Opp'n Ex. J at 3. (emphasis added). However, the Court notes that plaintiffs also requested "[t]he identification of all law enforcement officials who were present" during the raid. Opp'n Ex. J at 3. It is possible that a document could originate with a non-federal entity yet still be responsive to this first request regarding the identification of law enforcement officials.

The fact that a document originated outside of the federal government is not an automatic reason why the document cannot be produced in response to a *Touhy* request. Nothing in the DOJ's *Touhy* regulations explicitly exclude disclosure of information that originated outside of the federal government but is currently held by the DOJ or one of its components. *See* 28 C.F.R. §§ 16.21–16.29. Federal Defendants justify their decision to redact information originating outside the federal government on the basis that the *Touhy* regulations require the agency to consider relevant procedural rules, such as the Federal Rules of Civil Procedure, and "[p]laintiffs could have obtained these documents from 'some other source that is more convenient, less burdensome, or less expensive'"—namely, the City Defendants—which the FBI argues "are in a better position to determine whether the documents are privileged or discoverable in the underlying litigation." Mot. 26 (quoting Fed. R. Civ. P. 26(b)(2)(C)). The FBI also argues that "seeking non-federal documents from the FBI puts an unreasonable burden on the FBI, which would be tasked with reviewing, analyzing, and redacting voluminous non-FBI documents for possible privileges that would be better analyzed by the originating agencies." Mot. 27.

Notwithstanding Federal Defendants' concerns, the Court nevertheless finds that it will be a minimal burden to unredact documents already collected and reviewed by defendants that relate to "[t]he identification of all law enforcement officials who were present" during the raid. Opp'n Ex. J at 3. Indeed, the majority of the redactions made on the basis of code O-1 were also redacted for a different, independent reason, and may well remain redacted on a different basis. The Court expects that it will require relatively little time and expense to unredact, or redact on a new basis, information in documents originating outside of the FBI (and subsequently obtained by the FBI) identifying law enforcement officers present at the raid of plaintiffs' home. Accordingly, with respect to the redactions made on the basis of code O-1, the Court holds that it was arbitrary and capricious for the FBI to make such redactions with respect to information that constitutes "[t]he identification of all law enforcement officials who were present" during the raid. Opp'n Ex. J at 3.

E.    Conclusions under the Standard of the Federal Rules

The Court holds that it would reach the same conclusions discussed above under the standards of the Federal Rules. Rules 26 and 45 authorize the withholding of information if the information is privileged, not relevant, not proportional to the needs of the case, duplicative, or if producing the information would be burdensome or inefficient. *See* Fed. R. Civ. P. 26(b), 45(d)(3). The Federal Rules are also consistent with the valid application of *Touhy* regulations. *See In re Terrorist Attacks*, 523 F. Supp. 3d at 490. Plaintiffs have explicitly stated that they "do not seek information that is not responsive or irrelevant," Opp'n 18, and the Court's analysis with respect to responsiveness and relevance under the Federal Rules would be the same as above. Moreover, the only privilege that has been raised in this dispute is the law enforcement privilege, and the

32

Court would adopt the same conclusions under the Federal Rules as stated earlier in this Order. Finally, the Court finds that the FBI has not demonstrated an entitlement to redact information on the basis that disclosing the redacted information would be duplicative, burdensome, inefficient, or disproportionate to the needs of the case.

## II.    Next Steps

Typically, challenges to agency action brought under section 706 of the APA are resolved via cross-motions for summary judgment. *See Am. S.S. Owners Mut. Prot. & Indem. Ass'n, Inc. v. United States*, 489 F. Supp. 3d 106, 128 (E.D.N.Y. 2020). In the present case, Federal Defendants filed a motion for summary judgment that plaintiffs opposed; plaintiffs did not file their own motion for summary judgment. The Court has concluded that Federal Defendants are not entitled to summary judgment with respect to all of their redactions because the actions of the FBI were, in part, "arbitrary, capricious, . . . or otherwise not in accordance with law" under Section 706 of the APA. *See* 5 U.S.C. § 706 ("The reviewing court shall . . . hold unlawful and set aside agency action . . . found to be . . . arbitrary, capricious, . . . or otherwise not in accordance with law."). The Court therefore finds that plaintiffs would be entitled to partial summary judgment on their APA claim had they so moved. Accordingly, the Court hereby notifies Federal Defendants that the Court intends to grant summary judgment on the remaining redactions for the nonmovant plaintiffs *sua sponte* pursuant to Fed. R. Civ. P. 56(f)(1). Rule 56 explicitly permits district courts to "grant summary judgment for a nonmovant" after first "giving notice and a reasonable time to respond." Fed. R. Civ. P. 56(f). Federal Defendants will have thirty days to respond to this notification, and upon the expiration of that period, the Court will enter summary judgment in favor of plaintiffs on the remaining aspects of plaintiffs' claim. *See Koffarnus v. United States*, 175 F. Supp. 3d 769, 781 (W.D. Ky. 2016).

## CONCLUSION

For the stated reasons, Federal Defendants' motion for summary judgment is **GRANTED** in part and **DENIED** in part**.**

To the extent any information both (1) is encompassed within the scope of plaintiffs' *Touhy* request and (2) has been redacted on the basis of the Privacy Act, by December 17, 2025, plaintiffs or plaintiffs jointly with Federal Defendants may move for an order pursuant to 5 U.S.C. § 552a(b)(12) authorizing the disclosure of such information notwithstanding the Privacy Act, with appropriate measures to ensure confidentiality and safe handling of the information.

Federal Defendants are notified that the Court intends to grant summary judgment for the nonmovant plaintiffs *sua sponte* pursuant to Fed. R. Civ. P. 56(f)(1). Federal Defendants may respond to this notification on or before December 17, 2025, and upon the expiration of that period, the Court will—absent persuasive argument otherwise—enter summary judgment in favor of plaintiffs.


**SO ORDERED.**

  _/s/ Natasha C. Merle_
NATASHA C. MERLE
United States District Judge


Dated:        November 17, 2025
              Brooklyn, New York